Karen L. O'Connor, OSB No. 953710
karen.oconnor@stoel.com
Ryan S. Kunkel, OSB No. 154671
ryan.kunkel@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BLUE MOUNTAIN COMMUNITY MANAGEMENT, INC.<br><br>    Plaintiff,<br><br>v.<br><br>ROLLING ROCK COMMUNITY MANAGEMENT, a Oregon corporation, and DAVID SCHILD, an individual,<br><br>    Defendants. | Case No.: 3:22-cv-1833<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>(Breach of Contract; Breach of Fiduciary Duty and Duty of Loyalty; Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq.*; Oregon Uniform Trade Secrets Act, ORS 646.461 *et seq.*; Tortious Interference with Economic Relationships; Tortious Interference with Contractual Relationships; Preliminary and Permanent Injunctive relief) |

For its allegations against Defendants Rolling Rock Community Management ("Rolling Rock") and David Schild ("Schild") (collectively, "Defendants"), Plaintiff Blue Mountain alleges the following:

## NATURE OF THE ACTION

This lawsuit arises out of Defendants' unlawful efforts to steal away Plaintiff's customers since at least June 2022. At the time, Schild was employed by Plaintiff Blue Mountain Community Management, Inc. ("Blue Mountain") and owed it a duty not to divert its business to a competitor and to keep its confidential information confidential. Yet Schild secretly planned to quit his job and join a competitor, Rolling Rock. He colluded with Rolling Rock's managing partner – himself the former owner (and an employee) of Blue Mountain – to divert Blue Mountain business to Rolling Rock even before Schild terminated his employment with Plaintiff. Thereafter, Defendants continued to use Blue Mountain's confidential information and trade secrets to steal its clients out from under it, in direct violation of Schild's contractual obligations, state and federal law, and the common law. As a result of Defendants' unlawful conduct, Blue Mountain has suffered lost business of approximately $1,000,000.

## PARTIES AND JURISDICTION

1. Plaintiff Blue Mountain is an Oregon corporation with its principal place of business in Beaverton, Oregon.

2. Defendant Rolling Rock is an Oregon corporation with its principal place of business in Oregon and at all material times conducted regular and sustained business activities in Washington County, Oregon.

3. Defendant Schild is an individual who, upon information and belief, resides in Oregon.

4. Personal jurisdiction is proper in this Court because Rolling Rock does business in Oregon, Schild is a resident of Oregon, and Defendants have engaged in unlawful conduct in Oregon, which has caused Plaintiff harm.

116764552 0077859-00001

5.   Venue is proper in this Court because Defendants regularly conduct substantial business activities in Oregon and because the causes of action arise, in whole or in part, in Washington County, Oregon.

6.   This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 et seq. The Court also has supplemental or pendant jurisdiction over the remaining claims against Defendants, pursuant to 28 U.S.C. § 1367, because those claims form part of the same case or controversy as the federal question claims.

## STATEMENT OF FACTS

7.   Blue Mountain has its principal place of business in Beaverton, Oregon.

8.   Blue Mountain is in the business of selling, leasing, and providing consulting services for, and in respect of, managing residential and commercial real properties, including, but not limited to, apartment and retirement communities and community associations, with such services including, without limitation, the development of educational training and informational materials, internet-based services, bulk utility and telecommunication services, and online document management and purchasing services through their related entities.

### Allegations Against Schild

9.   On or around December 2, 2016, Blue Mountain hired Schild as a Compliance Officer.

10.   As a condition of Schild's employment with Blue Mountain, he signed an employment agreement ("Employment Agreement"), which contained restrictive covenants including nonsolicitation and nondisclosure obligations as well as a covenant of nonuse.

11. In signing his Employment Agreement, Schild expressly agreed not to solicit Blue Mountain's employees or clients during his employment or for a two-year period thereafter; the Employment Agreement states:

> Non-Solicitation: Employee agrees that during the period Employee is employed by Employer and for a period of two (2) years thereafter, Employee will not, either alone or in concert with others, directly or indirectly, solicit, entice, induce or encourage: (a) any employee(s) to leave the employment of Employer; (b) any client(s) to discontinue using Employer's services; (c) any client(s) to refer prospective clients to any competitor or to discontinue referring prospective clients to Employer or to switch clients from Employer to any competitor; or (d) any existing or proposed arrangement or other community or institutional affiliation to discontinue the affiliation or relationship with Employer.

12. The Employment Agreement also dictates Schild's responsibilities in terms of any of Blue Mountain's confidential information. Section 6 provides in part:

> Employee acknowledges that, in the course of performing and fulfilling Employee's duties, Employee may have access to and be entrusted with confidential information concerning the present and contemplated financial status and activities of Employer, the disclosure of any of which confidential information to competitors of Employer would be highly detrimental to the interests of Employer. Employee further acknowledges and agrees that the right to maintain the confidentiality of such information constitutes a proprietary right which Employer is entitled to protect.
>
> In addition, at Employer, our customers trust us with confidential information and the unauthorized disclosure of such information would have a material adverse impact on the integrity of Employer, would have an adverse impact on Employer's relationship with its customers, and may violate one or more laws designed to protect Employer's customers' privacy.

13. The Employment Agreement also dictates Schild's use of confidential information: "Employee agrees not to copy, transmit, reproduce, summarize, quote or make any

116764552 0077859-00001

commercial or other use whatsoever of Confidential Information, except as may be necessary to perform Employee's duties for Employer."

14. As part of his employment with Blue Mountain, Schild had access to Blue Mountain's confidential information, which includes but is not limited to information concerning Blue Mountain's finances; the identities and contact information for Blue Mountain clients; Blue Mountain's contract terms with its clients; Blue Mountain marketing plans; information pertaining to owner associations – HOA and COA, as well as individual homeowner/unit owners residing in the HOA/COA; and techniques, models, data, specifications, software, programs, reports, records, documentation, processes, know-how, customer lists, marketing plans, and financial and technical information.

15. In June 2022, Schild ended his employment with Blue Mountain and by June 27, 2022, began working at Rolling Rock.

16. Rolling Rock is a direct competitor of Blue Mountain. Rolling Rock is a full-service community management firm conducting the same or substantially similar business as Blue Mountain.

17. Before Schild ended his employment at Blue Mountain, he began an effort to take Blue Mountain clients with him to Rolling Rock, even diverting Blue Mountain business to Rolling Rock while he was still employed at Blue Mountain.

18. On or around June 2, 2022, Schild communicated with Joe Keizur ("Keizur"), Managing Partner at Rolling Rock, about quitting his employment with Blue Mountain and instead working for Rolling Rock.

19. Schild then used his position with Blue Mountain and his access to its confidential information and clients to solicit and divert Blue Mountain's business away from the company and to Schild's new employer, Rolling Rock.

20. As an example of Schild's unlawful activities, on or around June 7, 2022 – while still employed at Blue Mountain – he diverted business from a Blue Mountain client to Rolling Rock. In doing so, he disclosed Blue Mountain client contact information, which Schild had an obligation to keep confidential and not use for any purpose but to benefit Blue Mountain, to Rolling Rock.

21. Upon information and belief, Rolling Rock then used that confidential information to solicit and accept business from that client.

22. Similarly, on or around June 13, 2022, Schild sent additional business from a Blue Mountain client to Rolling Rock, again disclosing Blue Mountain client contact information to Rolling Rock.

23. Upon information and belief, Rolling Rock then used that confidential information to solicit and accept business from that client as well.

24. Two weeks later, on or around June 27, 2022, Schild started working at Rolling Rock, where his efforts to steal Blue Mountain clients have continued.

25. Schild immediately took to social media to continue soliciting Blue Mountain's vendors, contractors, and business contacts. In a LinkedIn post, Schild publicly announced his new role at Rolling Rock. But his message went further than a simple advertisement of his new job: He indicated Rolling Rock's goal of overtaking Blue Mountain in the market and his unabated intention to solicit Blue Mountain's clients and do business with them.

Page 6   -   COMPLAINT

116764552 0077859-00001

26. Schild described Rolling Rock's services and how Rolling Rock could help Blue Mountain's clients. He even directly asked Blue Mountain's clients to contact him about doing business together.

27. Finally, Schild specifically solicited Blue Mountain's vendors, stating his intention to continue working with them and bringing their business to Rolling Rock.

28. Schild's solicitation appears to have paid off, because on or around July 13, 2022, Schild was involved in accepting business from a Blue Mountain client that Rolling Rock had recently stolen from Blue Mountain, which, upon information and belief, was thanks to Schild's solicitation and knowledge and use of Plaintiff's confidential information.

29. Since Schild's departure, several other Blue Mountain employees have left Blue Mountain and are now employed at Rolling Rock. Upon information and belief, Schild directly or indirectly induced those employees to terminate their employment with Blue Mountain.

30. Schild's misconduct is an express breach of Sections 7, 8, and 10 of his Employment Agreement.

**Allegations Against Rolling Rock**

31. Keizur is the former owner of Blue Mountain. Keizur sold that company to Plaintiff, but continued his employment relationship with Blue Mountain after the transaction.

32. While employed at Blue Mountain, Keizur was subject to an employment agreement substantially similar to Schild's, including obligations not to solicit Blue Mountain clients or employees, and not to disclose its confidential information.

33. Shortly after Blue Mountain terminated Keizur's employment in December 2017, Keizur started working at Rolling Rock, which his wife, Kaycee Keizur, registered to do business in Oregon in April 2022.

34. In or around June 2022, before Schild's employment with Blue Mountain ended, Keizur, working on behalf of Rolling Rock, colluded with Schild to steal Blue Mountain clients, including the June 7 and June 13 incidents described above.

35. Upon information and belief, Keizur knew that Schild had an employment agreement with Blue Mountain that prohibited him from soliciting or otherwise encouraging Blue Mountain clients to do business with a competitor like Rolling Rock.

36. Upon information and belief, Rolling Rock, through Keizur, has used and disclosed Blue Mountain's confidential information to solicit and encourage Blue Mountain clients to terminate their contracts with Plaintiff and to instead do business with Rolling Rock.

37. Upon information and belief, Rolling Rock, through Keizur, has also diverted services provided by Plaintiff, including, but not limited to, insurance broker services, to Rolling Rock or affiliated companies.

## FIRST CLAIM FOR RELIEF

Breach of Contract

(Against Defendant Schild)

38. Blue Mountain incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

39. As a condition of his employment with Blue Mountain, Schild executed the Employment Agreement.

40. The Employment Agreement is a valid and enforceable contract that prohibits Schild from, among other things, soliciting, enticing, or encouraging any employees to leave employment with Blue Mountain; soliciting, enticing, or encouraging any Blue Mountain clients to discontinue using Blue Mountain's services; using Blue Mountain's confidential information

116764552 0077859-00001

except as necessary to perform duties for Blue Mountain; and disclosing Blue Mountain's confidential information to any other person, corporation, or entity except for Blue Mountain's sole benefit, either during or after Schild's employment with Blue Mountain.

43. Blue Mountain met all of its obligations under the Employment Agreement.

42. Schild breached the Employment Agreement by, among other things: (a) using Blue Mountain's confidential information to divert Blue Mountain's customers away from Blue Mountain and to Rolling Rock, both during and after his employment with Blue Mountain; (b) soliciting Blue Mountain's customers, vendors, and contractors to do business with Rolling Rock; (c) disclosing Blue Mountain's confidential information to Rolling Rock and other third parties; and (d) inducing Blue Mountain employees to terminate their employment with the company.

43. As a direct and proximate result of Schild's breach, Blue Mountain has sustained damages including, but not limited to, loss of valuable business and loss of profits and future profits, in an amount to be proven at trial but that is expected to be approximately $1,000,000. Those damages are continuing.

## SECOND CLAIM FOR RELIEF

Breach of Fiduciary Duty and Duty of Loyalty

(Against Defendant Schild)

44. Blue Mountain incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

45. As Compliance Officer at Blue Mountain, Schild operated as a fiduciary with respect to Blue Mountain's business and owed Blue Mountain a duty of loyalty and care, and was required to keep Blue Mountain's confidential information and business secrets inviolate.

46. Schild owed a duty of undivided loyalty to Blue Mountain and was obligated to avoid self-dealing, diverting business to a competitor, and usurping corporate opportunities from Blue Mountain.

47. Schild breached his fiduciary duty and duty of loyalty to Blue Mountain by engaging in misconduct that served his own and Rolling Rock's interests rather than the interest of Blue Mountain, such as by, among other things: (a) using Blue Mountain's confidential information to divert Blue Mountain's customers away from Blue Mountain and to Rolling Rock, both during and after his employment with Blue Mountain; (b) soliciting Blue Mountain's customers, vendors, and contractors to do business with Rolling Rock; (c) disclosing Blue Mountain's confidential information to Rolling Rock and other third parties; and (d) inducing Blue Mountain employees to terminate their employment with the company.

48. As a direct and proximate result of Schild's breach of his fiduciary duty and duty of loyalty, Blue Mountain has sustained damages including, but not limited to, loss of valuable business, loss of profits and future profits, and loss of good will in an amount to be proven at trial but that is expected to be approximately $1,000,000.

## THIRD CLAIM FOR RELIEF

DTSA – 18 U.S.C. § 1831 *et seq.*

(Against Defendants Schild and Rolling Rock)

49. Blue Mountain incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

50. Schild used Blue Mountain's confidential information, during and after his employment with Blue Mountain and while employed by Rolling Rock, that constitutes trade secrets subject to the protection of the DTSA, 18 U.S.C. § 1831 et seq.

116764552 0077859-00001

51. Rolling Rock used Blue Mountain's confidential information that constitutes trade secrets subject to the protection of the DTSA, 18 U.S.C. § 1831 et seq.

52. The information used by Defendants includes but is not limited to customer lists, customer contact information, Blue Mountain's operations, Blue Mountain's pricing, and Blue Mountain's business and marketing strategies.

53. That information is valuable because it is not generally known to the public and it is not readily accessible, through proper means, to others who can profit from its use.

54. Blue Mountain has spent significant sums, in terms of both financial and human resources, to develop and maintain that information, which would be of great value to any competitor.

55. Blue Mountain takes great effort to maintain the secrecy of its confidential information, including, but not limited to, restricting availability of certain confidential information to key employees; requiring employees to execute agreements with confidentiality provisions and restrictive covenants; physical security measures to protect against the disclosure of confidential information to third parties; and IT security measures, such as password protection for computers and segregation of certain files accessible only by certain employees.

56. Upon information and belief, Defendants used Blue Mountain's confidential information to divert or solicit Blue Mountain's customers away from Blue Mountain and to Rolling Rock, knowing that Schild was forbidden from doing so, and Defendants used that information to further the business of Rolling Rock.

57. Upon information and belief, Schild disclosed Blue Mountain's confidential information and trade secrets to Rolling Rock; Rolling Rock has received Blue Mountain's

confidential information through Schild, knowing that Schild was prohibited from sharing or using that information; and Defendants used that information for their own commercial benefit.

58. As a direct and proximate result of Defendants' actions, Blue Mountain has sustained and will continue to sustain damages including, but not limited to, loss of valuable business, loss of profits and future profits, and loss of good will in an amount to be proven at trial but that is expected to be approximately $1,000,000.

59. Defendants' misappropriation of Blue Mountain's trade secrets entitles Blue Mountain to monetary damages, fees, and costs, as provided in 18 U.S.C. § 1836(b)(3)(B). Blue Mountain is also entitled to recover for Rolling Rock's unjust enrichment.

60. Defendants' misappropriation of Blue Mountain's trade secrets was willful and malicious and was undertaken for the purpose of harming Blue Mountain; Blue Mountain will therefore seek exemplary and punitive damages as set forth in 18 U.S.C. § 1836(b)(3)(C). Blue Mountain is also entitled to recover for Rolling Rock's unjust enrichment.

## **FOURTH CLAIM FOR RELIEF**

(Against Defendants Schild and Rolling Rock)

Violation of the Oregon Uniform Trade Secrets Act ("OUTSA") – ORS 646.461 *et seq.*

61. Blue Mountain incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

62. Blue Mountain's confidential information, used by Schild during and after his employment with Blue Mountain ended and during his employment by Rolling Rock, constitutes trade secrets subject to the protection of the OUTSA, ORS 646.461 et seq.

63. Blue Mountain's confidential information used by Rolling Rock constitutes trade secrets subject to the protection of the OUTSA, ORS 646.461 et seq.

116764552 0077859-00001

64. The confidential information Defendants used includes, but is not limited to, customer lists, customer contact information, Blue Mountain's operations, Blue Mountain's pricing, and Blue Mountain's business and marketing strategies.

65. That information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use.

66. Blue Mountain has spent significant sums, in terms of both financial and human resources, to develop and maintain that information, which would be of great value to any competitor.

67. Blue Mountain takes great effort to maintain the secrecy of its confidential information, including, but not limited to, restricting availability of certain confidential information to key employees; requiring employees to execute agreements with confidentiality provisions and restrictive covenants; physical security measures to protect against the disclosure of confidential information to third parties; and IT security measures, such as password protection for computers and segregation of certain files accessible only by certain employees.

68. Upon information and belief, Defendants used Blue Mountain's confidential information to divert or solicit Blue Mountain's customers away from Blue Mountain and to Rolling Rock, knowing that Schild was forbidden from doing so, and Defendants have used that information to further the business of Rolling Rock.

69. Upon information and belief, Schild disclosed Blue Mountain's confidential information and trade secrets to Rolling Rock; Rolling Rock has received Blue Mountain's confidential information through Schild, knowing that Schild was prohibited from sharing or using that information; and Defendants used that information for their own commercial benefit.

70. As a direct and proximate result of Defendants' actions, Blue Mountain has sustained and will continue to sustain damages including, but not limited to, loss of valuable business, loss of profits and future profits, and loss of good will in an amount to be proven at trial but that is expected to be approximately $1,000,000.

71. Defendants' misappropriation of Blue Mountain's trade secrets entitles Blue Mountain to monetary damages, fees, and costs, as provided in ORS 646.465. Blue Mountain is also entitled to recover for Rolling Rock's unjust enrichment.

72. Defendants' misappropriation of Blue Mountain's trade secrets was willful and malicious and was undertaken for the purpose of harming Blue Mountain; Blue Mountain will therefore seek exemplary and punitive damages as set forth in ORS 646.465 and .467. Blue Mountain is also entitled to recover for Rolling Rock's unjust enrichment.

<u>**FIFTH CLAIM FOR RELIEF**</u>

Tortious Interference with Economic Relations

(Against Defendants Schild and Rolling Rock)

73. Blue Mountain incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

74. Schild, on behalf of and at the direction of his new employer, Rolling Rock, intentionally and tortiously interfered with Blue Mountain's existing and prospective business relationships through their unlawful solicitation of Blue Mountain's customers, vendors, and contractors.

75. In doing so, Schild and Rolling Rock unlawfully used Blue Mountain's misappropriated confidential information.

116764552 0077859-00001

76. Defendants have intentionally and maliciously engaged in acts intended to induce and that have induced Blue Mountain's current and prospective customers to terminate or reduce their business with Blue Mountain.

77. Defendants' improper conduct was committed with actual malice and ill will toward Blue Mountain, and with the intentional and improper purpose of causing irreparable harm and damage to Blue Mountain's business relationships, and was carried out through improper means, including, but not limited to, conduct in breach of Schild's contractual obligations to Blue Mountain and using or disclosing Blue Mountain's trade secrets and confidential information.

78. As a direct and proximate result of Defendants' actions, Blue Mountain has sustained and will continue to sustain damages including, but not limited to, loss of valuable business, loss of profits and future profits, and loss of good will in an amount to be proven at trial but that is expected to be approximately $1,000,000.

## SIXTH CLAIM FOR RELIEF

Tortious Interference with Contractual Relations

(Against Defendant Rolling Rock)

79. Blue Mountain incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

80. Schild is a party to the Employment Agreement, which governs Schild's non-solicitation, confidentiality, and non-disclosure obligations.

81. Upon information and belief, Rolling Rock knew of Schild's Employment Agreement, but nonetheless induced Schild to breach the Employment Agreement, including by instructing Schild to direct Blue Mountain customers to Rolling Rock.

82. Rolling Rock's actions were taken for the improper purpose of causing harm to Blue Mountain and were carried out through improper means of inducing Schild to breach his Employment Agreement and violating identifiable standards of business ethics and recognized business customs as to what is acceptable contact among employers and competitors in the industry

83. As a direct and proximate result of Rolling Rock's actions, Blue Mountain has sustained and will continue to sustain damages including, but not limited to, loss of valuable business, loss of profits and future profits, and loss of good will in an amount to be proven at trial but that is expected to be approximately $1,000,000.

## SEVENTH CLAIM FOR RELIEF

Preliminary and Permanent Injunction

(Against Defendants Schild and Rolling Rock)

84. Blue Mountain incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

85. Defendants Schild and Keizur were employees of Plaintiff and, in that capacity and pursuant to their employment agreements and restrictive covenants, had access to Plaintiff's confidential client information and trade secrets.

86. Defendants still possess Plaintiff's confidential client information and trade secrets, have used that information to solicit and steal Plaintiff's clients, and are likely to continue to do so in unfair and unlawful competition with Plaintiff.

87. In the absence of injunctive relief, Plaintiff will suffer irreparable harm, including but not limited to, loss of clients and employees, disclosure of client information to a competitor, loss of goodwill and business reputation, and continuing and unknown economic loss.

88. Plaintiff has no adequate remedy at law.

89. The potential harm to Plaintiff if Defendants are not enjoined is far greater than harm that Defendants may suffer if injunctive relief is not granted, especially since Defendant Schild agreed that Plaintiff would be entitled to injunctive relief in the event of one or more breaches of the Agreement.

90. Plaintiff is likely to prevail on the merits of its causes of action against each Defendant.

91. The public interest weighs in favor of granting injunctive relief.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and order the following relief:

1. A preliminary injunction ordering Defendants to:

    a. immediately return all confidential information they have in their possession and to verify in a sworn writing that they have returned all such information and have retained no copies or derivative works;

    b. immediately and permanently destroy and delete the confidential information in its possession, custody, or control;

    c. refrain from using or disclosing to any third party any of Blue Mountain's confidential information or trade secrets;

    d. refrain from directly or indirectly diverting or soliciting Blue Mountain's clients; and

e.  refrain from directly or indirectly soliciting Blue Mountain's employees.

2. A permanent injunction ordering the same relief described above in paragraph 1.

3. Ordering Schild and Rolling Rock to immediately return all confidential information they have in their possession and to verify in a sworn writing that they have returned all such information and have retained no copies or derivative works;

4. Ordering Schild and Rolling Rock to immediately and permanently destroy and delete the confidential information in its possession, custody, or control;

5. An award of actual and compensatory damages in an amount to be proven at trial, but believed to be approximately $1,000,000, including lost profits and/or unjust enrichment caused by Defendants' wrongful acts, as well as disgorgement of all compensation paid to Schild during his period of disloyalty;

6. Pre- and post-judgment interest;

7. Exemplary and punitive damages in an amount to be determined at trial;

8. Reasonable attorneys' fees and costs; and

9. Other relief as the Court may determine is just and equitable, including equitable tolling of the Employment Agreement.

DATED: November 22, 2022.

STOEL RIVES LLP

*s/ Ryan S. Kunkel*
KAREN L. O'CONNOR, OSB No. 953710
karen.oconnor@stoel.com
RYAN S. KUNKEL, OSB No. 154671
ryan.kunkel@stoel.com
Telephone: 503.224.3380

Attorneys for Plaintiff

116764552 0077859-00001